786 So.2d 310 (2001)
LOUISIANA WORKERS' COMPENSATION CORPORATION, Plaintiff-Appellant,
v.
Carl GRAY, Defendant-Appellee.
No. 34,731-WCA.
Court of Appeal of Louisiana, Second Circuit.
May 9, 2001.
*312 Street & Street by C. Daniel Street, Monroe, Counsel for Defendant-Appellee.
Egan, Johnson & Stiltner by Patricia L. Barfield, and Patricia Jackson Delpit, Baton Rouge, Counsel for Plaintiff-Appellant.
Before NORRIS, CARAWAY and PEATROSS, JJ.
NORRIS, Chief Judge.
The insurer, Louisiana Workers' Compensation Corporation ("LWCC"), appeals a judgment rejecting its claim that Carl Gray's compensation benefits should be forfeited for fraud and assessing a $4,000 penalty and $6,000 attorney fee for wrongful termination of benefits. For the reasons expressed, we affirm the judgment with respect to the forfeiture claim but reverse the penalty and attorney fee.

Factual and procedural background
The underlying facts were not disputed. Gray was employed as a bricklayer for Valenzuela Masonry in September 1994 when he sustained a work-related neck injury. LWCC, the statutory employer's compensation carrier, began paying benefits of $293.33 per week; in 1996 these were converted from temporary total to SEB. LWCC also provided a diskectomy performed by Dr. Irby in January 1996; when Gray's pain management physician, Dr. Ellis, found maximum medical improvement in March 1997, LWCC referred *313 Gray to Janet Papworth, a rehabilitation counselor.
Ms. Papworth testified that in an initial meeting in September 1997, Gray insisted he was still suffering pain in his shoulder, arms and back, and unable to work, although he felt he could supervise a crew. After this, she was never able to meet him at his home, although she found a cement mixer and a van marked "Carl Gray, General Building Contractor" in the yard. She further testified that in two subsequent meetings, Gray refused to participate in a Job Service search, declined to let Ms. Papworth update his resume, said he would not drive from Ruston to Monroe to work, insisted he could work only in a supervisory position, and declared he was "not fixing to jump down to common labor for nobody." Despite his refusal to cooperate, Ms. Papworth located two openings, in Farmerville and Ruston, and forwarded these job descriptions to Dr. Ellis.
Apparently suspecting that Gray was doing contracting work while collecting comp, LWCC began making surveillance video tapes. These tapes, taken on four occasions in September 1997, twice in November 1997, and once each in April, May and September 1998, allegedly show Gray digging, hammering, carrying boards, climbing ladders, finishing cement, and other acts of heavy labor. Ms. Papworth sent the first of these tapes to Dr. Ellis along with the job descriptions; in February 1998 Dr. Ellis viewed the tapes and released Gray to his former employment.
In February 1999 LWCC filed the instant motion for forfeiture of benefits on grounds of fraud, specifically false statements to Ms. Papworth and Dr. Ellis, prohibited by La. R.S. 23:1208 F. Alternatively it sought a 50% reduction of benefits for Gray's failure to accept rehabilitation services, R.S. 23:1226 E. In September 1999, LWCC terminated benefits; according to Julie Justice, LWCC's claims adjuster, this was because Gray sustained another workrelated injury. Gray reconvened against LWCC, seeking reinstatement of SEB plus penalties and attorney fees for wrongful termination of benefits. Prior to trial, LWCC listed the surveillance video tapes as trial exhibits.
Trial was held in April 2000. As noted, Ms. Papworth described her efforts to provide rehab services to Gray, and Ms. Justice explained why LWCC stopped benefits in September 1999. On cross examination, Ms. Justice admitted that for "one or two months" Gray reported income, as required by La. R.S. 23:1208 G. Three local contractors testified that they employed Gray as a bricklayer for periods between late 1998 and early 2000. LWCC offered the surveillance video tapes into evidence; Gray's counsel objected on grounds that these were irrelevant to false statements that he allegedly made months earlier. It is disputed whether counsel objected to the tapes' authenticity. Gray himself did not appear for trial.
The WCJ ruled orally in June 2000 that although the man in the video tapes was "clearly * * * physically capable of performing extensive manual labor," she was not certain it was really Gray, so she would not consider the tapes for purposes of forfeiture. She then found that Gray did not cooperate with Ms. Papworth for rehab services, so she ordered a 50% reduction in SEB effective January 12, 1998. Turning to Gray's reconventional demand, the WCJ found that based on the three contractors' testimony, and Gray's failure to refute it, Gray did not prove he was entitled to additional weekly benefits after September 1999. Finally, she noted Ms. Justice's testimony that LWCC cut off benefits because of an alleged new workrelated injury; however, LWCC offered no proof to substantiate this injury, and the *314 WCJ found it more likely LWCC terminated benefits because it suspected fraud. Declaring this arbitrary and capricious, she awarded Gray a penalty of $4,000 and an attorney fee of $6,000.
Judgment was rendered in accordance with the oral reasons in July 2000; the judgment explicitly rejected LWCC's claim for forfeiture.[1] LWCC has appealed, raising four assignments of error.

Discussion: Denial of forfeiture
By its first assignment of error LWCC urges that in denying the fraud claim against Gray, the WCJ was clearly wrong in failing to consider and rely upon the surveillance video tapes which, by the admission of Gray's own counsel, depicted Gray performing various acts of heavy labor and were properly admitted into evidence.
The first part of the argument addresses the video tapes. At trial Gray's counsel objected to the tapes on grounds that "they'd have to relate to the alleged [false] statements." LWCC's counsel then asked:
Ms. BARFIELD (FOR LWCC): Okay. I was just unclear, Your Honor. If the video tapes are being admitted, Your Honor, I don't think I need to call the investigators.
THE COURT: Okay.
Ms. BARFIELD: Because I haven't heard any objection about the authenticity or [sic ] what's on the video tape as far as it being Mr. Gray.
MR. STREET (FOR GRAY): That's right. They were admitted, so.

(R.p. 121, emphasis added)
LWCC urges that the objection was limited to the tapes' relevance, not their authenticity, and thus the WCJ was obliged to consider them. LWCC further argues that the videographer need not testify in order for tapes to be properly admitted. Kelly v. Riles, 99-601 (La.App. 5 Cir. 12/15/99), 751 So.2d 302, writ not cons. 00-0147 (La.3/17/00), 755 So.2d 893.
We find that the WCJ properly admitted the video tapes under the general rule of admissibility discussed in Kelly v. Riles, supra, and citations therein. She then held, however, that they were not probative because she could not tell whether they portrayed the defendant. This was probably wrong, as Gray's counsel did not object to the authenticity of the tapes, and other evidence (Dr. Ellis's deposition) confirms that the tapes do in fact depict Gray at work.[2] Moreover, LWCC waived calling the videographer to testify, explicitly because counsel replied that there was no "objection about the authenticity." Under the circumstances, the WCJ should have considered these video tapes.
Nevertheless, appeal lies from the judgment itself, not the reasons for judgment. Davis v. Borskey, 94-2399 (La.9/5/95), 660 So.2d 17, fn. 6; Fireman's Fund Ins. Co. v. Browning-Ferris Indus., 30,595 (La.App. 2 Cir. 5/13/98), 714 So.2d 168, writs denied 98-1569, 98-1555 (La.9/18/98), 724 So.2d 765, 769. In the instant case, the WCJ did not erroneously refuse to admit relevant evidence; she admitted it, reviewed it, and found it unpersuasive. The WCJ has great discretion to assign whatever weight she deems appropriate to evidence that has been admitted. *315 Chaisson v. Cajun Bag & Supply Co., 97-1225 (La.3/4/98), 708 So.2d 375. We therefore will review the denial of the forfeiture claim under the manifest error standard. Hoy v. Gilbert, 98-1565 (La.3/2/99), 754 So.2d 207.
Forfeiture of benefits for misrepresentation is governed by La. R.S. 23:1208, which provides in part:
§ 1208. Misrepresentation concerning benefit payments; penalty
A. It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment under the provisions of this Chapter, either for himself or for any other person, to willfully make a false statement or representation. * * *
E. Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter. * * *
F. Whenever the employer reports an injury to the office pursuant to R.S. 23:1306, the employer and employee shall certify their compliance with this Chapter to the employer's insurer on a form prescribed by the director, which shall include all of the following information:
(1) A summary of the fines and penalties for workers' compensation fraud. * * *
G. Whenever an employee receives benefits pursuant to this Chapter for more than thirty days, the employee shall report his other earnings to his employer's insurer quarterly on a form prescribed by the director.
H. (1) Whenever an employee fails to report to his employer's insurer as required by this Section within fourteen days of his receipt of the appropriate form, the employee's right to benefits as provided in this Chapter may be suspended. * * *
This statute authorizes forfeiture of benefits upon proof that (1) there is a false statement or representation, (2) it is willfully made, and (3) it is made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Const. Co., 94-2708 (La.9/5/95), 660 So.2d 7; Smalley v. Integrity Inc., 31,247 (La. App. 2 Cir. 12/9/98), 722 So.2d 332, writ denied 99-0072 (La.3/19/99), 739 So.2d 782. The WCJ's factual findings are entitled to great discretion and will be reversed only on a showing of manifest error. Hoy v. Gilbert, supra. Because § 1208 is penal in nature, it must be strictly construed, both in its substantive ambit and in its penalty provisions. Chevalier v. L.H. Bossier Inc., 95-2075 (La.7/2/96), 676 So.2d 1072; Smalley v. Integrity Inc., supra.
We have closely examined the evidence. It is somewhat inconsistent for Gray to tell Dr. Ellis on August 13, 1997, that his pain was as bad as before he began treatment, and again on November 5, 1997 to report that after a recent flare-up, his pain was as bad as before his surgery; while in the interim, the video tapes depict him doing heavy construction work on four separate occasions. It is also inconsistent for him to deny in deposition that he worked various jobs in September 1998 and the summer of 1999, when his employers testified that he performed those jobs without any apparent difficulty. Also, the record shows that Gray was evasive and uncooperative with Ms. Papworth. If this were the only evidence in the record, we would have to find manifest error.
However, we note that in his November 5 visit with Dr. Ellis he admitted he was active and had tried painting. Moreover, Ms. Justice testified that she first requested a monthly report of Gray's earnings in February 1999. Until the *316 proper notice and forms have been provided to a claimant pursuant to R.S. 23:1208 F, G and H, this court is reluctant to declare a claimant's failure to report income fraudulent. Smalley v. Integrity Inc., supra. Ms. Justice admitted that after February 1999, Gray did indeed report income for "one or two months."[3] This indicates an attempt to comply with the forfeiture statute. Given the strict construction of the forfeiture statute, the conflicting state of the evidence, and Gray's apparent effort to comply with the reporting provisions when requested, we find the WCJ was not plainly wrong in refusing to order forfeiture.
As for Gray's refusal to cooperate with Ms. Papworth, we note that the WCJ remedied this with a 50% reduction pursuant to R.S. 23:1226 E. There was no error in failing to penalize the same conduct with forfeiture under R.S. 23:1208. LWCC's first assignment of error lacks merit.

Penalty and attorney fee
By its remaining assignments of error LWCC challenges the imposition of a $4,000 penalty and $6,000 attorney fee. We find legal and factual errors which require us to reverse this portion of the judgment.
The WCJ stated that Gray's benefits "were actually terminated due to indications of fraud," but that LWCC failed to prove any actual fraud; and that LWCC also failed to prove the purported reason for termination, a subsequent work-related injury.
The penal provision for discontinuance of benefits is R.S. 23:1201.2, which provides in pertinent part:
Any employer or insurer who at any time discontinues payment of claims due to and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims.
This section explicitly applies to the termination of payments; a corresponding section, R.S. 23:1201 F, applies only to a failure to begin payments.[4]Williams v. Rush Masonry Inc., 98-2271 (La.6/29/99), 737 So.2d 41; Cleveland v. Delhi Guest Home, 29,506 (La.App. 2 Cir. 5/7/97), 694 So.2d 607, fn. 3. Only attorney fees are generally recoverable under § 1201.2 if the employer or insurer arbitrarily and capriciously discontinues payments of benefits due. Williams v. Rush Masonry Inc., supra. Arbitrary and capricious action consists of "willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation." Brown v. Texas-LA Cartage Inc., 98-1063 (La.12/1/98), 721 So.2d 885 (quoting Black's Law Dictionary ). An award of attorney fees in a workers compensation case is penal in nature, as it is intended to discourage indifference and undesirable conduct by employers and insurers. The fee should not be imposed in doubtful cases, where a bona fide dispute exists as to the employee's entitlement to benefits. J.E. Merit Constructors Inc. v. *317 Hickman, 00-0943 (La.1/17/01), 776 So.2d 435.
After LWCC discontinued benefits, Gray filed a reconventional demand seeking reinstatement of SEB, plus penalties and attorney fees. On the benefits claim the WCJ found that Gray "failed to meet his burden of proof that he is temporarily totally disabled or that he is unable to earn at least 90% of his pre-injury wages." She therefore denied his claim for additional benefits. She then found, however, that the termination of SEB was arbitrary and capricious. This is inconsistent and erroneous. After the WCJ finds a claimant able to work, the termination of his benefits cannot be arbitrary and capricious. See, J.E. Merit Constructors v. Hickman, supra.
Moreover, the burden of proof is on the claimant to establish that the insurer's conduct was arbitrary or capricious. Washington v. Lyons Specialty Co., 96-0263 (La.App. 1 Cir. 11/8/96), 683 So.2d 367, writ denied 96-2944 (La.1/31/97), 687 So.2d 408. LWCC put on testimony regarding the termination of benefits, but Gray offered absolutely no evidence to rebut or contradict it. While the WCJ is certainly entitled to doubt a party's evidence, the claimant must offer something to show that the conduct was arbitrary and capricious, in order to recover attorney fees under § 1201.2. Gray introduced nothing to dispute LWCC's evidence.
Finally, the record shows that LWCC began surveillance of Gray in September 1997; because of the robust activity shown on these tapes and Gray's evasive behavior with Ms. Papworth, LWCC suspected fraud some two years before it actually terminated benefits. LWCC filed this disputed claim in February 1999, seeking legal redress for fraud before it halted benefits. Even extending maximum deference to the WCJ's factual findings, this record will not support the conclusion that LWCC "actually" terminated benefits because it suspected fraud.
For these reasons, the portion of the judgment finding LWCC arbitrary and capricious in terminating Gray's benefits is plainly wrong and will be reversed. This conclusion obviates full discussion of LWCC's remaining assignments of error, but we would note them for the sake of completeness. A violation of § 1201.2, if proved, entitles the claimant to an attorney fee only. Williams v. Rush Masonry, supra. The award of a penalty is unauthorized. Even if a penalty were available, there is a statutory cap of $2,000. La. R.S. 12:1201 F. We pretermit any consideration of the amount of the attorney fee.

Conclusion
For the reasons expressed, we affirm the portion of the judgment that declined to order a forfeiture of benefits. We reverse the award of the penalty and attorney fee. Judgment to this effect is rendered, and all costs are assessed to the appellee, Carl Gray.
AFFIRMED IN PART, REVERSED IN PART AND RENDERED.
NOTES
[1] After receiving the oral reasons for judgment, Gray filed a rule for § 1208 sanctions against LWCC and Ms. Papworth, urging they had intentionally presented false testimony at trial. The WCJ held a hearing in July 2000 and orally rejected this claim; the instant record does not show that this ruling has been reduced to judgment or that Gray has appealed it.
[2] The tapes were not forwarded to this court with the other exhibits.
[3] She did not retain the monthly reports of earnings, defined in R.S. 23:1208 H, and these were not offered in evidence.
[4] R.S. 23:1201 F authorizes "reasonable attorney fees" and a penalty, not to exceed $2,000, against any employer or insurer who fails to pay SEB within 14 days of receiving written notice of the injury. This section does not apply "if the claim is reasonably controverted or if such nonpayment results from conditions over which the employer had no control."