805 So.2d 1267 (2002)
Levita FIGUEROA, Plaintiff-Appellant,
v.
HARDTNER MEDICAL CENTER, Defendant-Appellant.
No. 35,678-WCA.
Court of Appeal of Louisiana, Second Circuit.
January 25, 2002.
*1270 Stacy C. Auzenne, Alexandria, Counsel for Levita Figueroa.
John B. Saye, Monroe, Counsel for Hardtner Medical Center.
Before WILLIAMS, STEWART and CARAWAY, JJ.
*1271 CARAWAY, J.
The employer in this case terminated workers' compensation benefits to its former nurse, upon learning that the nurse was employed as a public school teacher. The employer claimed that false statements and representations were made by the employee, thereby requiring the forfeiture of benefits under La. R.S. 23:1208. The employee reconvened, requesting supplemental earnings benefits (SEBs), penalties and attorney's fees. The workers' compensation judge denied the employer's claim for forfeiture of benefits, but also denied the employee's claims. Both parties appeal the ruling. We now affirm the ruling regarding forfeiture and reverse the ruling which denied SEBs.

Facts
Claimant, Levita Figueroa ("Figueroa"), worked as a registered nurse for Hardtner Medical Center ("Hardtner"), a geriatric psychiatric hospital in Urania, Louisiana. On May 9, 1999, Figueroa was attacked by an Alzheimer's patient when she attempted to wake the patient to put him to bed. The patient grabbed Figueroa and hit her on the face and upper body, until an assistant managed to pull the patient off of her. Figueroa, who is right handed, suffered injuries to her right arm and right jaw. Figueroa claims that her injuries prevent her from performing her job duties: (1) preparing charts; (2) caring for mentally ill patients; and (3) bathing, feeding and/or lifting patients. Figueroa asserts that she has not regained strength in her right arm and has experienced mental problems as a result of being restricted from working as a nurse. Also, at the time of the accident, Figueroa was attending graduate school, studying to become a family nurse practitioner.
When doctors informed Figueroa that she could no longer work, she quit working at Hardtner in July 1999. Her testimony indicates that for the six-month period, January through June 1999, she earned approximately $18,000 as a Hardtner nurse. Figueroa then began receiving maximum wage benefits from Hardtner near the end of July 1999 in the amount of $359.48 per week. Nevertheless, in late August 1999, Figueroa accepted employment as a biology school teacher at Alexandria Senior High School. Figueroa testified that she received approximately $1500 per month as a teacher.
On March 10, 2000, Hardtner filed Louisiana Department of Labor Form 1008 to terminate Figueroa's workers' compensation benefits. Hardtner's Form 1008 alleges that Figueroa was engaged in employment at Alexandria Senior High School while receiving indemnity benefits, a violation of La. R.S. 23:1208. Figueroa filed an Answer to Form 1008 on June 20, 2000, denying any "false statements" and claiming that her benefits were arbitrarily terminated. Additionally, Figueroa argued that she was entitled to Supplemental Earnings Benefits (SEBs) under La. R.S. 23:1221(3)(a), because the wages she earned as a school teacher was less than ninety percent (90%) of her pre-injury wage. On September 13, 2000, Figueroa filed a Reconventional Demand against Hardtner, alleging that Hardtner's termination of benefits was arbitrary, capricious and without cause, that she was entitled to SEBs, and that Hardtner should pay all back due benefits, along with penalties and attorney's fees, plus interest from the date of termination of benefits.
Following trial, the Workers' Compensation Judge ("WCJ") rendered oral reasons for judgment and granted Figueroa's Motion for Directed Verdict, dismissing Hardtner's claim that Figueroa made false statements under La. R.S. 23:1208. Nevertheless, the WCJ also denied Figueroa's demand for SEBs, as well as her claim for *1272 penalties and attorney's fees for Hardtner's alleged unreasonable termination of benefits.
On appeal, both parties contest the WCJ's rulings.

Discussion
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Hoy v. Gilbert, 98-1565 (La.3/2/99), 754 So.2d 207; Seal v. Gaylord Container Corporation, 97-0688 (La.12/2/97), 704 So.2d 1161; Banks v. Industrial Roofing & Sheet Metal Works, 96-2840 (La.7/1/97), 696 So.2d 551; Smith v. Louisiana Department of Corrections, 93-1305 (La.2/28/94), 633 So.2d 129; Freeman v. Poulan/Weed Eater, 93-1530 (La.1/14/94), 630 So.2d 733. In applying the manifest error/clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the fact finder's conclusion was a reasonable one. Seal, supra; Banks, supra; Freeman, supra; Stobart v. State, 617 So.2d 880, 882 (La.1993). Where there are two permissible views of the evidence, a fact finder's choice between them can never be manifestly erroneous or clearly wrong. Seal, supra; Banks, supra; Stobart, supra. Thus, if the fact finder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Seal, supra; Banks, supra.

Section 1208 Forfeiture
Hardtner's answer to the appeal asserts that Figueroa fraudulently obtained benefits through misrepresentations when she endorsed and cashed her indemnity checks, while simultaneously working at the high school. Also, Hardtner claims that Figueroa's failure to inform Hardtner or its claims adjuster of her change in work status constitutes fraud under La. R.S. 23:1208.
Forfeiture of workers' compensation benefits is governed by La. R.S. 23:1208, which provides in part: "It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment... to willfully make a false statement or representation." Section 1208(E) provides the following remedy, among others, for an employee's fraudulent acts:
Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter.
Section 1208 is a broadly worded statute that applies to any false statements or representations, including those concerning prior injuries, and the employer need not show that it has been prejudiced as a condition of forfeiture. Hernandez v. ESKCO, Inc., XXXX-XXXX (La.App. 4th Cir.11/15/00), 773 So.2d 865, writ denied, XXXX-XXXX (La.2/9/01), 785 So.2d 824. The statute, which requires a worker to forfeit workers' compensation benefits for willfully making a false statement or misrepresentation to obtain benefits, is rationally related to the state's objective of promoting honest representations and full disclosure by claimants. Sumrall v. Luhr Bros., 95-0779 (La.App. 1st Cir.12/15/95), 665 So.2d 796, writ denied, 96-0187 (La.3/15/96), 669 So.2d 425.
La. R.S. 23:1208 allows for the forfeiture of benefits when proof is made that (1) there is a false statement or representation; (2) that is willfully made; and (3) is made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Const. Co., 94-2708 (La.9/5/95), 660 So.2d 7; Smalley v. Integrity, Inc., *1273 31,247 (La.App.2d Cir.12/9/98), 722 So.2d 332, writ denied, 99-0072 (La.3/19/99), 739 So.2d 782.
When a claimant does not receive the forms for reporting earnings, the employee should not be found guilty of La. R.S. 23:1208 fraud when working and receiving indemnity and medical benefits, since the employer never inquired about the employee's earnings while paying benefits. Smalley, supra. Until proper notice and forms are provided to the claimant, appellate courts have been reluctant to declare a claimant's failure to report income as fraudulent behavior. Louisiana Workers' Compensation Corp. v. Gray, 34,731 (La.App.2d Cir.5/9/01), 786 So.2d 310, 316; Smalley, supra.
At trial, Figueroa claimed that she was not aware that working at a different job was impermissible while receiving workers' compensation benefits. Figueroa testified that she spoke with Hardtner's adjuster, Martha Walker, only on one occasionJune 24, 1999. At that time, Figueroa was still attempting to work for Hardtner. Figueroa denies that Walker explained that her entitlement to benefits would end upon her return to work. Figueroa had no further contact with Walker until her daughter received a call from Walker in January, 2000. During the January 2000 phone call, Figueroa's daughter informed Walker that her mother was at work. Upon learning that Figueroa was working, Walker told claimant's daughter that Figueroa committed fraud and would go to jail.
Figueroa claims that she never received any forms requesting information about her earnings or any information from Hardtner detailing her rights under the Workers' Compensation Act. She asserts that neither Walker nor anyone else ever asked her if she was working anywhere from September 1999 until the January 2000 phone call. Figueroa testified that had she known that it was improper to work and receive workers' compensation indemnity benefits, she would not have worked. She also testified that she never intended to misrepresent her work status.
Hardtner asserts that its evidence proved that Figueroa fraudulently obtained benefits. Hardtner points to Walker's deposition testimony, wherein Walker reviewed her handwritten note from the June 24, 1999 phone call. Walker's note stated: "Spoke with Ms. Figueroa, advised her of her rights under Workers' Comp. No. 1, two-thirds of her salary would be paid until such time as she is able to return to work; No. 2, medical paid 100 percent; No. 3, entitled to mileage 28 cents a mile." (Emphasis ours). Furthermore, Hardtner asserts that Figueroa received a letter dated December 14, 1999 from Hardtner, which advised that her next check "will pay you from December 29, 1999 through January 11, 2000, unless your work status changes during that pay period ..." (Emphasis ours). Although Figueroa admitted to receiving all of her benefit checks at her home address, she denied receiving the December 14 letter referencing work status changes.
Finally, Hardtner insists that the WCJ's reasons for judgment indicate that Figueroa violated the statute. In portions of the ruling, the WCJ expressed the "opinion that Ms. Figueroa knew it was wrong to receive workers' compensation benefits while working." Yet after further review, the WCJ concluded that Hardtner failed in its burden of proof to show "that she had actual knowledge that it would constitute a misrepresentation and be considered as fraud by working and receiving worker's compensation benefits...."
From our review of the evidence and the WCJ's reasons for judgment, we find that *1274 the WCJ ultimately chose a reasonable view of the facts, opting to rely on Figueroa's testimony that she did not know that she would be barred from benefits while working as a teacher. Despite the directive to Figueroa listed on Walker's note of the June 24 conversation, Figueroa never received two-thirds of her former weekly wage when Hardtner later began paying benefits. Likewise, the considerable wage differential between Figueroa's reduced salary as a teacher and her former salary as a nurse could allow "her the benefit of the doubt" as the WCJ stated in the oral ruling. The WCJ therefore was not clearly wrong in finding that Figueroa's conduct did not rise to the level of a willful nondisclosure to her employer.
Moreover, we view the WCJ's ruling as correctly determining that Figueroa made no "false statement or representation" to Hardtner as required by Section 1208. Figueroa's failure to communicate with Hardtner after she returned to work or, in other words, her silence under these circumstances, fails to meet the statutory test. A narrow construction of this penal statute is warranted. Louisiana Workers' Compensation Corp. v. Gray, supra.
Accordingly, we affirm the WCJ's dismissal of Hardtner's claim for forfeiture under La. R.S. 23:1208.

SEBs
With her assignment of error, Figueroa asserts that the WCJ's dismissal of her reconventional demand requesting SEBs is manifestly erroneous, and that she is entitled to retroactive payment of indemnity benefits from the date that Hardtner terminated her benefits, plus interest.
Under the provisions of La. R.S. 23:1221(3)(a), an employee is entitled to receive SEBs if she sustains a work-related injury that results in her inability to earn ninety percent (90%) or more of her average pre-injury wage. La. R.S. 23:1221(3)(a). Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in her inability to earn that amount under the facts and circumstances of the individual case. Seal, supra; Freeman, supra; Todd v. Security Industrial Insurance, 33-233 (La.App.2d Cir.5/15/00), 759 So.2d 1082; Kahlden v. Horseshoe Entertainment, 30,277 (La.App.2d Cir.2/25/98), 709 So.2d 873. This analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers' compensation is to be liberally construed in favor of coverage. Seal, supra, citing Daigle v. Sherwin-Williams Co., 545 So.2d 1005, 1007 (La.1989); Todd, supra; Kahlden, supra. The purpose of SEBs is to compensate the injured employee for the wage earning capacity she has lost as a result of her accident. Pinkins v. Cardinal Wholesale Supply, 619 So.2d 52, 56 (La.1993); Kahlden, supra.
In determining whether a hearing officer's finding that an employee has not met her initial burden of proving entitlement to SEBs is manifestly erroneous, a reviewing court must examine the record for all evidence that bears upon the employee's inability to earn 90% or more of her pre-injury wages. Seal, supra. (Emphasis in original). In this case, we find that the WCJ committed manifest error by dismissing Figueroa's claim for SEBs.
The evidence shows that Figueroa has taken several different medications as part of her treatment (Neurontin, Oxycontin, Vicoprofen, Xanax, Ambien, Relafen, Cortisone steroids, Fibro-A-Cream, Flexeril, Lidocaine, Stadol, Tylenol, Ibuprofen, and Prozac). She has been primarily treated by Dr. P.C. Ambiavagar. Figueroa has also been treated by Dr. Elke Werner, a neurologist, Dr. Ronald Marks, an oral *1275 surgeon, and Dr. Stephen Katz, a pain management specialist. On June 8, 1999, Dr. Ambiavagar's records indicate that claimant was "unable to work right now." Figueroa was referred to Dr. Marks for her TMJ jaw problem on June 14, 1999. Despite the medical restrictions, Figueroa continued to work at Hardtner, until she could no longer do so. Dr. Ambiavagar's records reflect that as of April 6, 2001, Figueroa remained disabled, was depressed, and suffered from severe pain in her right forearm.
Dr. Katz diagnosed Figueroa with brachial neuritis on January 3, 2000. Along with medication, Dr. Katz sent Figueroa to physical therapy in November, 2000. Figueroa asserts that the physical therapy was not successful. Dr. Werner confirmed that nerve conduction studies show that she suffers mild right radial sensory neuropathy.
When Dr. Ambiavagar informed Figueroa that she could not return to work as a nurse, she became very depressed. Her injuries prevent her from working as a nurse, because her arm shakes uncontrollably when she attempts to give patients injections. Also, Figueroa cannot lift patients as she did before the accident.
Moreover, Figueroa's teaching job at the high school required her to work only 7 hours per day, compared to the 12-hour shift and 42-hour work week at Hardtner. At trial, Figueroa stated that as a teacher, she earned $6,000 from September through December, 1999. Claimant also testified that as a registered nurse, she earned $18,000 from Hardtner between January and June, 1999. Using these figures, it is clear that Figueroa did not earn 90% of her pre-injury wage while working as a high school teacher. Thus, from our review of all of the medical evidence and the facts concerning Figueroa's work as a teacher, we find that claimant met her initial burden of proof, by a preponderance of the evidence, that her injury resulted in her inability to earn 90% of her pre-injury wage.
Once the employee's burden is met, the burden shifts to the employer, who, in order to defeat the employee's claim for SEBs or establish the employee's earning capacity, must prove, by a preponderance of the evidence, that the employee is physically able to perform a certain job and that the job was offered to the employee, or that the job was available to the employee in her or the employer's community or reasonable geographic region. La. R.S. 23:1221(3)(c)(i); Seal, supra; Daigle, supra; Todd, supra; Kahlden, supra. Actual job placement is not required. Banks, supra. If the employer meets this burden, then the claimant must show, by clear and convincing evidence, that she is unable to perform the offered or available work solely because of substantial pain. La. R.S. 23:1221(3)(c)(ii); Todd, supra.
The fact that Figueroa held a job as a school teacher did not relieve Hardtner from proving that there was some other job available for her that would place her in the position of earning at least 90% of her pre-injury wage. Her salary as a teacher was far short of that 90% requirement. The calculation for SEBs under La. R.S. 23:1221(3)(a) is based upon two-thirds of the difference between the employee's average monthly wages at the time of injury and what she is able to earn thereafter. Thus, using the estimate of wage data from Figueroa's testimony, there was approximately a $1500 difference per month in the reduced salary Figueroa received as a teacher compared to her nursing salary. Two-thirds of that difference would be indemnified by SEBs, totaling approximately $1000 per month or $250 per week.
*1276 Thus, our review of the record reveals that Hardtner failed to carry its burden of proof. No one from Hardtner ever contacted Figueroa or her physicians to determine her work restrictions. Moreover, Hardtner never offered Figueroa a job with modifications to accommodate her injury, nor did it inform her of other jobs that may have been appropriately suited for her under the Workers' Compensation Act. It is the employer's burden to come forward and show that the employee is physically able to perform a certain job and that a job was offered to the employee or that a job was available to the employee in either the community or the reasonable geographic region. La. R.S. 23:1221(3)(c)(i); Kahlden, supra.
Given the sizable difference in the wages and the job requirements between Figueroa's work as a nurse and her work as a teacher, we conclude that Hardtner failed to meet its burden of proof, and the WCJ's ruling dismissing Figueroa's claim with prejudice is clearly wrong. See and compare, Banks, supra. Accordingly, we reverse that portion of the WCJ's ruling which denies Figueroa's claim for SEBs and remand for a determination of the appropriate award of SEBs.[1] Based upon the evidence presented by both sides at trial, SEBs should be computed from the time that Hardtner discontinued benefits through the present time, with credit to Hardtner for the wages Figueroa could have earned as a teacher, whether or not she was actually employed. Regarding Figueroa's claim that she is no longer able to work as a teacher, we do not find that she established, by clear and convincing evidence, that she was unable to perform continued and available work as a teacher after the time that she quit her position at the high school in May 2000.

Penalties and Attorney's Fees
Lastly, Figueroa seeks reversal of the WCJ's denial of penalties and attorney's fees, claiming that Hardtner consistently delayed delivery of her weekly indemnity benefits, a violation of La. R.S. 23:1201(F),[2] and that Hardtner's termination of her benefits in January 2000 was arbitrary, capricious and unreasonable, in violation of La. R.S. 23:1201.2.[3]
Both penalties and attorney's fees may be awarded to a claimant if payment of compensation benefits is not commenced timely, if continued benefits are not paid timely, or if medical benefits are not paid timely, unless "the claim is reasonably controverted," or the nonpayment *1277 results from conditions over which the employer and insurer have no control. Williams v. Rush Masonry, Inc., 98-2271 (La.6/29/99), 737 So.2d 41. However, only attorney's fees are recoverable under Section 1201.2 if the employer or insurer arbitrarily discontinues payment of benefits due. Williams, supra.
Regarding a claim under Section 1201(F), an employee has the burden of proving her entitlement to statutory penalties for the employer's failure to timely pay workers' compensation benefits. Parfait v. Gulf Island Fabrication, Inc., 97-2104 (La.App. 1 Cir. 1/6/99), 733 So.2d 11. To reasonably controvert a workers' compensation claim so as to avoid imposition of penalties and attorney fees, the employer and its insurer must provide sufficient factual or medical information to reasonably counter the evidence provided by claimant. Nowlin v. Breck Const. Co., 30,622 (La.App. 2 Cir. 6/24/98), 715 So.2d 112. Penalties are stricti juris and should be imposed only if the facts clearly negate good faith and just cause in connection with the refusal to pay. Guillory v. Travelers Ins. Co., 294 So.2d 215 (La.1974); Duncan v. State, 556 So.2d 881 (La.App. 2 Cir.1990); Nowlin, supra. Nevertheless, the WCJ has great discretion to award or deny penalties and attorney fees, and her decision will not be disturbed absent abuse of that discretion. Duncan, supra; McKenzie v. City of Bossier City, 585 So.2d 1229 (La.App. 2 Cir.1991); Nowlin, supra.
With regards to Figueroa's burden to prove her entitlement to attorney fees pursuant to La. R.S. 12:1201.2, she had to prove that the termination of her benefits was arbitrary, capricious, or without reasonable cause. "Arbitrary and capricious behavior consists of willful and unreasoning action, without consideration and regard for facts and circumstances presented, or of seemingly unfounded motivation." Williams, supra, Citing, Brown v. Texas-LA Cartage, Inc., 98-1063 (La.12/1/98), 721 So.2d 885 (Other citations omitted).
Figueroa argued in the trial court that Hardtner consistently sent her compensation checks late, in violation of Section 1201(F). Figueroa testified that she deposited her compensation checks on the same date she received them. Also, copies of the checks were admitted into evidence, which show stamped dates which were presumably affixed by her bank. No proof was offered by Figueroa to show that the stamped date was indeed affixed by her bank on the date she deposited her checks. Moreover, the front of each check, as dated by Hardtner, shows that the checks were at least issued timely. As such, we cannot say that claimant met her burden of proving that Hardtner's payments were untimely as provided by La. R.S. 23:1201(F).
Furthermore, as previously discussed, Hardtner terminated Figueroa's benefits and filed Form 1008, claiming a violation of Section 1208 for Figueroa's failure to report earnings. Although we affirm the dismissal of Hardtner's suit on Figueroa's motion for directed verdict, we cannot say that, based on this record, Hardtner's termination of indemnity benefits was arbitrary and capricious. Attorney's fees should not be imposed in doubtful cases, where a bona fide dispute exists as to the employee's entitlement to benefits, and the mere fact that an employer loses a disputed claim is not determinative. J.E. Merit Constructors, Inc. v. Hickman, XXXX-XXXX (La.1/17/01), 776 So.2d 435; Sharbono v. Steve Lang & Son Loggers, 97-0110 (La.7/1/97), 696 So.2d 1382. In this case, it is clear that Hardtner's actions in terminating Figueroa's indemnity benefits *1278 was based on the fact that Figueroa was working as a high school teacher. Even if the termination of benefits was legally incorrect, as stated above, we hold that Hardtner's termination does not amount to arbitrary or capricious behavior. J.E. Merit Constructors, Inc., supra. Therefore, we find that the WCJ's ruling denying Figueroa's request for penalties and attorney fees is without error.

Conclusion
For the reasons stated above, the Motion for Directed Verdict granted in favor of claimant, Levita Figueroa, is hereby affirmed. Also, the dismissal of Figueroa's reconventional demand on the issue of SEBs is hereby reversed and remanded for a proper calculation of the past due SEBs in accordance with our ruling above. In all other respects, the judgment of the lower court is hereby affirmed. Costs of this appeal are assessed to Hardtner Medical Center.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
NOTES
[1] The wage data contained in the record, while sufficient to determine that Figueroa is unable to earn 90% of her former wage, is not detailed enough for us to fix the precise amount of SEB payments.
[2] La. R.S. 23:1201(F) provides: "Failure to provide payment in accordance with this Section shall result in the assessment of a penalty in an amount equal to twelve percent of any unpaid compensation or medical benefits or fifty dollars per calendar day, whichever is greater, for each day in which any and all compensation or medical benefits remain unpaid, together with reasonable attorney fees for each disputed claim; however, the fifty dollars per calendar day penalty shall not exceed a maximum of two thousand dollars in the aggregate for any claim ..."
[3] La. R.S. 23:1201.2 provides: "Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney fees shall not apply to cases where the employer or insurer is found liable for attorney fees under this Section. The provisions of R.S. 22:658(C) shall be applicable to claims arising under this Chapter."