| t PEATROSS, J.
This is an appeal from a judgment of the Workers’ Compensation Judge (“WCJ”) awarding Levita Figueroa supplemental earnings benefits (SEBs) subject to a credit of $1,944 per month, representing the amount Ms. Figueroa earned or could have earned as a high school teacher. Ms. Figueroa appeals the portion of the judgment ordering the credit of the teaching wage. For the reasons stated herein, we affirm.

FACTS

Ms. Figueroa, a registered nurse, was injured during the course and scope of her employment at Hardtner Medical Center (“Hardtner”) when she was physically attacked by an elderly Alzheimers patient on May 9, 1999. Ms. Figueroa sustained an aggravation to a pre-existing TMJ condition and injury to her right radial nerve, causing pain and weakness in her right arm. Ms. Figueroa received workers’ compensation benefits after the incident. On March 10, 2000, Hardtner filed a disputed claim to terminate benefits when it discovered that Ms. Figueroa was teaching at Alexandria Senior High School (“ASH”) in January 2000. Ms. Figueroa taught biology and algebra at ASH for the 1999-2000 school year. She did not renew her contract for the 2000-2001 school year and has not worked at all since May 2000.
The WCJ dismissed Hardtner’s claim for forfeiture of benefits and dismissed Ms. Figueroa’s claim for back due SEBs. On appeal, this court affirmed the dismissal of Hardtner’s claims, but reversed the dismissal of Ms. Figueroa’s claim for back due SEBs and, noting a lack of detailed wage information to allow the court to determine the precise amount of SEBs, | ^remanded for a determination of the amount of SEBs due her. See Figueroa v. Hardtner Medical Center, 35,678 (La.App.2d Cir.1/25/02), 805 So.2d 1267. After trial on remand, the WCJ awarded Ms. Figueroa SEBs from January 2000 through March 12, 2002, offset by her teacher’s earnings, determined to be $1,944 per month. In addition, the WCJ awarded her temporary total disability *1189 benefits from March 12, 2002, through July 25, 2002, in the amount of $359.48 per week. Finally, she was awarded SEBs based on zero earnings beginning July 25, 2002, and continuing until Hardtner could prove Ms. Figueroa’s ability to return to work after that date. This appeal ensued.

DISCUSSION

The only issue before this court is whether the WCJ erred in offsetting the SEBs from January 2000 through March 12, 2002, by Ms. Figueroa’s earnings and potential earnings as a teacher. It is not disputed that Ms. Figueroa could not continue working in her pre-injury capacity as a nurse at Hardtner due to the pain and weakness in her right arm. She further argues that she resigned her position at ASH at the end of May 2000 because she missed too many school days and because of the pain and depression resulting from her injury. Ms. Figueroa argues that the offset awarded by the WCJ, which continued until March 12, 2002, the date on which her treating physician, Dr. P.C. Am-biavagar, determined that she was temporarily totally disabled[1], was, therefore, manifestly erroneous and should be overturned. We disagree.
|3As previously mentioned, in the prior appeal of this case, a panel of this court reversed the WCJ’s dismissal of Ms. Figueroa’s claim for SEBs and remanded for a determination of the amount of SEBs owed. This court specifically found as follows:
Based upon the evidence presented by both sides at trial, SEBs should be computed from the time that Hardtner discontinued benefits through the present time, with credit to Hardtner for the wages Figueroa could have earned as a teacher, whether or not she was actually employed. Regarding Figueroa’s claim, that she is no longer able to work as a teacher, we do not find that she established, by clear and convincing evidence, that she was unable to perform continued and available work as a teacher after the time that she quit her position at the high school in May 2000. (Emphasis added.)
We find the above ruling to be the “law of the case” on the issue presented in the instant appeal. The law of the case doctrine is a discretionary guide which relates to (a) the binding force of a trial judge’s ruling during the later stages of trial, (b) the conclusive effects of appellate rulings at trial on remand and (c) the rule that an appellate court ordinarily will not reconsider its own rulings of law on a subsequent appeal in the same case. Northeast Realty v. Jackson, 36,276 (La.App.2d Cir.8/14/02), 824 So.2d 1264, citing Glenwood Hospital, Inc. v. Louisiana Hospital Service, Inc., 419 So.2d 1269 (La.App. 1st Cir.1982). Reargument in the same case of a previously decided point will be barred where there is simply a doubt as to the correctness of the earlier ruling. Only where there is palpable error or where, if the law of the case was applied, manifest injustice would occur, is the doctrine not applied. Northeast Realty, supra; Glenwood Hospital, Inc. v. Louisiana Hospital Service, Inc., supra. The reasons for the law of the case doctrine are: to avoid relitigation of the same | ¿issue; to promote consistency of result in the same litigation; and to promote efficiency and fairness to both parties by affording a single opportunity for the argument and decision of the matter at issue. Will Drill Resources, Inc. v. Huggs, Inc., 36,797 (La.App.2d Cir.1/29/03), 836 So.2d 1211; Northeast Realty, supra, citing Day v. Campbell-Grosjean Roofing and Sheet *1190 Metal Corporation, 260 La. 325, 256 So.2d 105 (1971); Louisiana Land and Exploration Company v. Verdin, 95-2579 (La.App. 1st Cir.9/27/96), 681 So.2d 63, writ denied, 96-2629 (La.12/13/96), 692 So.2d 1067, cert. denied, 520 U.S. 1212, 117 S.Ct. 1696, 137 L.Ed.2d 822 (1997).
We find no palpable error in this court’s prior ruling and further find that no manifest injustice would occur in application of the law of the case doctrine to the case sub judice. On remand from the prior appeal, the WCJ was constrained by this doctrine to follow the above-quoted holding and apply a credit to Hardtner for wages that Ms. Figueroa earned or could have earned as a public high school teacher, whether or not she was actually employed. Further, notwithstanding the fact that the WCJ allowed evidence on this point on remand, application of the law of the case doctrine allows this court to decline to reconsider the prior ruling of the court in the earlier appeal in this case.
Even if the law of the case doctrine did not operate to preclude reconsideration of this issue, we find a sufficient factual basis in the record before us, which includes the entire record from the previous appeal, to support the finding that a credit to Hardtner for Ms. Figueroa’s teaching |fiwage was proper in this case. As previously stated, Ms. Figueroa taught at ASH during the 1999-2000 school year. During that year, her husband accepted employment in, and moved to, Lake Charles, with Ms. Figueroa maintaining a residence in Pineville. At the end of the school year, in May 2000, Ms. Figueroa resigned her teaching position at ASH and the record reflects that Ms. Figueroa had secured an offer for a teaching position in Lake Charles, but chose not to accept the position. Ms. Figueroa argues that she resigned from ASH and declined the position in Lake Charles because she was unable to continue working as a teacher because she “could not keep up” and had excessive absences due to substantial pain from her injury to her right arm. See La. R.S. 23:1221(3)(c)(ii)[2]. The record, however, reveals that Ms. Figueroa indicated as her reason for resigning her teaching position at ASH that she was moving to Lake Charles to be with her husband. Further, we note that her personnel records from ASH indicate satisfactory performance and attendance by Ms. Figueroa for the year that she was employed by the school.
IfiNeither Dr. Ambiavagar nor Dr. Stephen Kátz, a pain management specialist who treated Ms. Figueroa during the year she was teaching, was aware that Ms. Figueroa was working as a teacher in 1999-2000. Despite her argument that she was *1191 in such pain during that school year that she often had to leave school early and was excessively absent due to pain and depression, there are no notations in any of the medical records that Ms. Figueroa discussed her difficulties performing her teaching duties with either of her treating doctors. According to Dr. Ambiavagar’s deposition testimony, Ms. Figueroa told Dr. Ambiavagar that she had been teaching only after the fact that she was working and receiving benefits at the same time became an issue and Ms. Figueroa was anxious about the pending court appearance. Dr. Ambiavagar’s testimony reveals that Ms. Figueroa related to her another entirely different reason for her decision to quit working as a teacher:
Q: Do you know that the reason that she stopped teaching was, according to her exit interview with Rapides Parish School Board, was to move to Lake Charles to be with her husband?
A: (No response.)
Q: Do you know that?
A: No. She said she was stopped; because she was told she could not work. She — Because when you’re under a Comp case you’re not supposed to work and then she worked. She didn’t realize that. And then they stopped her.
In addition, we note that the deposition testimony of Dr. Katz indicates that Ms. Figueroa was responding well to pain therapy and medications during the time period in which she was teaching and shortly |7after she resigned from ASH. While Dr. Katz declined to express a medical opinion as to Ms. Figueroa’s degree of disability, he testified as follows:
Q: Again, at that time, July of 2000, you didn’t tell her she couldn’t work as a teacher or a nurse or anything; is that correct?
A: That is correct.
Q: She didn’t—
A: I have never told Ms. Figueroa not to go to work. I have never restricted Ms. Figueroa from any work-related activities. And I’m unaware of any work-related activities that Ms. Figueroa was involved in.
We acknowledge that Ms. Figueroa has experienced continuing symptoms and pain from her injury and we do not dismiss her ongoing physical and psychological problems created by her injury and inability to work at her pre-injury job as a registered nurse. Notwithstanding application of the law of the case doctrine, however, this record contains sufficient evidence to support the reasonable conclusion that Ms. Figueroa was not prevented from performing as a teacher due solely to substantial pain. There is no manifest error in such conclusion and, therefore, no error in applying a credit to her SEBs for teaching wages.

CONCLUSION

For the foregoing reasons, the judgment of the Workers’ Compensation Judge awarding SEBs to Levita Figueroa based on her earnings as a teacher of $1,944 per month is affirmed. Costs are assessed to Levita Figueroa.
AFFIRMED.

. Ms. Figueroa was subsequently released to restricted duty work on July 25, 2002.

. La. R.S. 23:1221(3)(c) states as follows:
(i) Notwithstanding the provisions of Sub-paragraph (b) of this Paragraph, for purposes of Subparagraph (a) of this Paragraph, if the employee is not engaged in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, or is earning wages less than the employee is able to earn, the amount determined to be the wages the employee is able to earn in any month shall in no case be less than the sum the employee would have earned in any employment or self-employment, as described in Subparagraph (b) of this Paragraph, which he was physically able to perform, and (1) which he was offered or tendered by the employer or any other employer, or (2) which is proven available to the employee in the employee’s or employer’s community or reasonable geographic region.
(ii) For purposes of Subsubparagraph (i) of this Subparagraph, if the employee establishes by clear and convincing evidence, unaided by any presumption of disability, that solely as a consequence of substantial pain, the employee cannot perform employment offered, tendered, or otherwise proven to be available to him, the employee shall be deemed incapable of performing such employment.