833 So.2d 1177 (2002)
Joe BOLTON, Plaintiff-Appellant
v.
MIKE FLEMING CONSTRUCTION, and Luba, Defendant-Appellee.
No. 36,521-WCA.
Court of Appeal of Louisiana, Second Circuit.
December 11, 2002.
*1179 Fischer & McMahon, by Mark K. Manno, for Appellant.
Crawford & Anzelmo, by K. Douglas Wheeler, Monroe, for Appellee.
Before GASKINS, DREW and HARRISON (Pro Tempore), JJ.
GASKINS, J.
The plaintiff, Joe Bolton, appeals the judgment of a workers' compensation judge (WCJ) denying his claim for supplemental earnings benefits and for penalties and attorney fees against the defendant, Mike Fleming Construction, for failure to pay indemnity and medical benefits. In its answer to the appeal, the defendant claims that the WCJ erred in rejecting its claim of fraud against the plaintiff under La. R.S. 23:1208. The defendant also objects to the WCJ's award of medical benefits to the plaintiff. For the following reasons, we affirm.

FACTS
Bolton had numerous health problems including trouble with his knees, shoulders, and back. He had surgery on his knees six times. He had surgery on his left shoulder twice and he had surgery on his elbow once. He had hernia surgery and eye surgery. In addition, he had degenerative arthritis in his back. He had sustained injuries on three different occasions on previous jobs and had drawn workers' compensation benefits. After a work injury in 1984, the plaintiff was basically unemployed and did odd jobs until July 2000, when he was hired by the defendant.
Mike Fleming Construction engages in residential home construction and carpentry. Bolton began working for the defendant on July 17, 2000. He was to be paid $7.00 per hour and was to work 40 hours per week. His job was to sweep up and to carry small boards around construction sites. He usually worked with a crew of 6-8 other employees.
On July 27, 2000, the plaintiff was sent, by himself, to remove the wood framing around a concrete patio slab. He claims that as he was preparing to discard some boards, his left foot slipped out from under him, followed by his right foot. He claims that he reached back to catch himself with his right hand, injuring his right shoulder. He picked up his tools and called his foreman, Robert Vasquez. When Mr. Vasquez arrived, Bolton was lying on the concrete driveway, as if he was taking a nap, with his tools stacked nearby.
The plaintiff sought medical treatment. He went to Willis-Knighton Work Kare and was seen by Dr. Fred Price. Dr. Price diagnosed him with a shoulder sprain and restricted him to light duty work. The arm was placed in a sling. *1180 Bolton later continued treatment of his right shoulder with his orthopedist, Dr. Ryan Bicknell.
The accident occurred on Thursday. The plaintiff did not go to work on Friday, but he did report for work on Monday. The defendant claims that it provided light duty work for Bolton in accordance with his physician's orders. The plaintiff worked through Wednesday, and then quit his job.
The plaintiff had already scheduled knee surgery for a problem not related to this work injury. Bolton met Mike Fleming in the parking lot of a convenience store where he was given his last pay check. According to Fleming, Bolton told him that he was about to have knee surgery. The plaintiff expressed interest in returning to work after his recuperation. Surgery on the knee was performed on August 15, 2000.
The defendant did not hear from Bolton again until January 17, 2001, when he filed a disputed claim for compensation against the defendant, claiming injury to his right hand, shoulder and scapula. In addition to naming Mike Fleming Construction as a defendant, the plaintiff also included its self-insurance fund, Louisiana United Business Association (LUBA). LUBA was later dismissed as a party.
Bolton told insurance investigators that he had never had any trouble with his right shoulder before this accident. During the investigation, it was revealed that the plaintiff had sought treatment for right shoulder pain on several occasions prior to this injury. The defendant claimed that the plaintiff willfully made false statements and representations to obtain benefits.
The matter was tried on October 11, 2001 and concluded on November 26, 2001. The case was submitted on December 19, 2001. On February 15, 2002, the WCJ rendered a judgment largely in favor of the plaintiff. The WCJ found that Bolton proved by a preponderance of the evidence that he sustained a work-related accident resulting in a right shoulder injury on July 27, 2000, in the course and scope of his employment. The WCJ found that the defendant failed to prove that the plaintiff violated La. R.S. 23:1208, based upon a finding that the statements made by the plaintiff were inconsequential and not for the purpose of obtaining workers' compensation benefits. The WCJ denied the plaintiff's claim for supplemental earnings benefits (SEBs). The defendant was ordered to pay the plaintiff's medical expenses in the amount of $225.00. The plaintiff's claim for penalties and attorney fees was denied. The plaintiff appealed and the defendant answered the appeal.

SUPPLEMENTAL EARNINGS BENEFITS
The plaintiff argues on appeal that the WCJ erred in denying his claim for SEBs from August 3, 2000, prospectively, without giving reasons. According to Bolton, because the WCJ found there was an accident with injury in the course and scope of employment, the injury is compensable. Because there was no showing that the plaintiff earned any wages after August 2, 2000, he claims that he is entitled to SEBs from that date. This argument is without merit.
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Seal v. Gaylord Container Corporation, 97-0688 (La.12/2/97), 704 So.2d 1161; Figueroa v. Hardtner Medical Center, 35,678 (La.App.2d Cir.1/25/02), 805 So.2d 1267. In applying the manifest error/clearly wrong standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether *1181 the fact finder's conclusion was a reasonable one. Seal v. Gaylord Container Corporation, supra; Figueroa v. Hardtner Medical Center, supra. Where there are two permissible views of the evidence, a fact finder's choice between them can never be manifestly erroneous or clearly wrong. Thus, if the fact finder's findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even if convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Seal v. Gaylord Container Corporation, supra; Figueroa v. Hardtner Medical Center, supra.
The purpose of SEBs is to compensate the injured employee for the wage-earning capacity he has lost as a result of the accident. Marshall v. Louisiana Pacific Corporation, 35,182 (La. App.2d Cir.11/2/01), 799 So.2d 837.
Under the provisions of La. R.S. 23:1221(3)(a), an employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn 90 percent or more of his average pre-injury wage. Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. This analysis is necessarily a facts and circumstances one in which the court is mindful of the jurisprudential tenet that workers' compensation is to be liberally construed in favor of coverage. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551; Daigle v. Sherwin-Williams Company, 545 So.2d 1005 (La.1989); Figueroa v. Hardtner Medical Center, supra.
In determining whether a finding that an employee has not met his initial burden of proving entitlement to SEBs is manifestly erroneous, a reviewing court must examine the record for all evidence that bears upon the employee's inability to earn 90 percent or more of his pre-injury wages. Seal v. Gaylord Container Corporation, supra; Figueroa v. Hardtner Medical Center, supra.
Once the employee's burden is met, the burden shifts to the employer. An employer can discharge its burden by establishing, by a preponderance of the evidence, (1) the existence of a suitable job within the claimant's physical capabilities, and within the claimant's or the employer's community or reasonable geographic region; (2) the amount of wages that an employee with claimant's experience and training can expect to earn in that job; and (3) an actual position available for that particular job at the time that the claimant received notification of the job's existence. Actual job placement is not required. La. R.S. 23:1221(3)(c)(i); Seal v. Gaylord Container Corporation, supra; Figueroa v. Hardtner Medical Center, supra; Payne v. Lawn Lourd Lawn Service, 35,491 (La. App.2d Cir.12/5/01), 803 So.2d 321; Marshall v. Louisiana Pacific Corporation, supra. If the employer meets this burden, then the claimant must show, by clear and convincing evidence, that he is unable to perform the offered or available work solely because of substantial pain. La. R.S. 23:1221(3)(c)(ii); Seal v. Gaylord Container Corporation, supra.
According to Bolton, there was a compensable accident; he was then restricted to light duty. He disputes the claim that light duty work was offered by the defendant. The defendant did not initiate vocational rehabilitation and there was no showing that the plaintiff had any earned income since August 2, 2000. The plaintiff contends that he proved that he was not earning 90 percent of his pre-injury wage, so the burden of proof shifted to the defendant *1182 to prove job availability and/or earning capacity. The plaintiff claims that he is entitled to SEBS from August 3, 2000 at the maximum rate of $186.87 per week. The plaintiff claims entitlement to past due benefits in a lump sum plus continuing SEBs until he is able to earn 90 percent of his pre-injury wage.
The defendant argues that Bolton is not entitled to SEBs because he was given light duty work. According to the defendant, the plaintiff never complained that he was unable to do light duty work because of pain. Because the plaintiff did not carry his burden of proving that, as a result of his injury, he is unable to earn 90 percent of his pre-injury wage, the defendant contends that the burden of proof never shifted to the defendant to show the plaintiff's ability to work and the availability of a suitable job. No rehabilitation services were offered to the plaintiff because he was able to work at a light duty job at the same wage.
The parties stipulated that Bolton was never temporarily totally disabled and that he was released to return to light duty work on July 27, 2000, the day of the accident. He was instructed not to reach over his head and a limitation was placed on the amount of weight he could lift.
According to Bolton, he was given a work restriction slip by Dr. Price at Work Kare, which he took to the defendant. Robert Vasquez acknowledged that he received the slip from the plaintiff and Bolton was assigned to light duty work carrying small boards, under twenty pounds, and sweeping up around the construction site. After the injury, when Bolton resumed work, Vasquez claimed that he observed Bolton carrying boards in his sling and he cautioned him not to exceed his light duty restrictions. Vasquez claimed that the plaintiff was carrying the boards with no obvious pain.
Michael Fleming testified that after Bolton was injured, he was placed on light duty work with no reduction in salary. He stated that Bolton would still have been employed with the company if he had not quit. Fleming stated that the plaintiff told him that he was scheduled to have knee surgery. Fleming told Bolton that he could come back to work after he recuperated from the surgery. Fleming stated that he never heard from the plaintiff again until the present suit was filed.
Bolton testified that when he returned to work after the accident, Vasquez told him to take it easy and assigned him the task of pulling nails. He acknowledged that he could work with one hand while the injured arm was in a sling. He asserts that he was then asked to help hold up a wall while it was nailed in place. He contended that he was not given light duty work. He claimed that due to shoulder pain, he quit his job with the defendant. The plaintiff testified that he could have gotten other jobs within the light duty restrictions, but he simply had not gone back to work.
By denying the plaintiff's claim for SEBs, the WCJ found that Bolton did not carry his burden of proof. The record shows that the plaintiff suffered a minor injury and was released to light duty work immediately after the injury. The record also shows that the defendant offered light duty work to the plaintiff at no reduction in pay. Under these circumstances, the plaintiff has failed to show that, as a result of the accident and injury, he is unable to earn 90 percent or more of his pre-injury wage. Therefore, the WCJ did not err in denying Bolton's claim for SEBs.

PENALTIES AND ATTORNEY FEES
Bolton claims that the trial court erred in denying his claims for penalties *1183 and attorney fees for the defendant's failure to approve indemnity and medical benefits. The plaintiff claims entitlement to penalties of $2,000 for failure to pay indemnity and $2,000 for failure to pay medical benefits. He also claims attorney fees. This argument is without merit.
Failure to provide compensation benefits shall result in the assessment of a penalty and reasonable attorney fees unless the claim is "reasonably controverted" or nonpayment results from conditions over which the employer or its insurer had no control. La. R.S. 23:1201(F).
Regarding a claim under La. R.S. 23:1201(F), an employee has the burden of proving his entitlement to statutory penalties for the employer's failure to timely pay workers' compensation benefits. To reasonably controvert a workers' compensation claim so as to avoid imposition of penalties and attorney fees, the employer and its insurer must provide sufficient factual and medical information to reasonably counter the evidence provided by the claimant. Figueroa v. Hardtner Medical Center, supra.
To meet this standard, the employer must have some "valid reason or evidence upon which to base his denial of benefits." Feild v. General Motors Corporation, 36,339 (La.App.2d Cir.9/18/02), 828 So.2d 150. The court must determine whether the employer "engaged in a non-frivolous legal dispute or possessed factual and/or medical information to reasonably counter the factual and medical information presented by the claimant throughout the time he refused to pay all or part of the benefits allegedly owed. Feild v. General Motors Corporation, supra.
Penalties are stricti juris and should be imposed only when the facts clearly negate good faith and just cause in connection with the refusal to pay. Figueroa v. Hardtner Medical Center, supra. The WCJ's decision to award or deny attorney fees is subject to manifest error of review. Feild v. General Motors Corporation, supra.
The record shows that the plaintiff paid the plaintiff's medical expenses at Work Kare and paid for some of the plaintiff's visits to Dr. Bicknell. Kelly Rhea, the insurance adjuster for the defendant's workers' compensation insurer, testified at trial. She stated that the plaintiff's claim has numerous "red flags" that prompted the company to investigate. These included the fact that the accident was not witnessed. Also, according to Ms. Rhea, Bolton's drug screening test, done the day of the accident, showed the presence of a strong pain killer.[1] These factors prompted the defendant to investigate the plaintiff's claims. When Ms. Rhea attempted to take a statement from the plaintiff, his lawyer terminated the interview in order to attend another deposition. He indicated that he would reschedule the statement within a week. However, this did not occur promptly.
Ms. Rhea testified that the initial reason for the denial was because the plaintiff's attorney did not allow the claim to be investigated. After the statement was completed, indemnity benefits were denied because light duty work had been made available to the plaintiff. Also, based upon the plaintiff's medical records, the defendant *1184 determined that the plaintiff had not disclosed prior complaints of pain in the right shoulder.
The employer in a workers' compensation case has the duty to investigate and make a reasonable effort to assemble and assess factual and medical information to ascertain whether a claim is compensable. Allen v. Misco Paper, 27,146 (La. App.2d Cir.8/23/95), 660 So.2d 175. However, in this case, the investigation was delayed by the plaintiff. Under these circumstances, we do not find that the WCJ was manifestly erroneous in denying the plaintiff's claim for penalties and attorney fees.

FRAUD
The defendant answered the appeal, claiming that the WCJ erred in rejecting its fraud claim against the plaintiff. This claim is without merit.
Forfeiture of workers' compensation benefits is governed by La. R.S. 23:1208, which provides in pertinent part, "It shall be unlawful for any person, for the purpose of obtaining or defeating any benefit or payment ... to willfully make a false statement or representation." La. R.S. 23:1208(E) provides the remedy, among others, for an employee's fraudulent acts: "Any employee violating this Section shall, upon determination by workers' compensation judge, forfeit any right to compensation benefits under this Chapter."
La. R.S. 23:1208 is a broadly worded statute that applies to any false statements or representations, including those concerning prior injuries, and the employer need not show that it has been prejudiced as a condition of forfeiture. Figueroa v. Hardtner Medical Center, supra. The statute, which requires a worker to forfeit workers' compensation benefits for willfully making a false statement or misrepresentation to obtain benefits, is rationally related to the state's objective of promoting honest representations and full disclosure by claimants. Figueroa v. Hardtner Medical Center, supra.
La. R.S. 23:1208 allows for the forfeiture of benefits when proof is made that (1) there is a false statement or representation; (2) that is willfully made; and (3) is made for the purpose of obtaining or defeating any benefit or payment. Resweber v. Haroil Construction Company, 94-2708 (La.9/5/95), 660 So.2d 7; Figueroa v. Hardtner Medical Center, supra.
The forfeiture remedy is a harsh one and must be strictly construed. False statements that are inadvertent or inconsequential will not result in forfeiture. Morton v. Wal-Mart Stores, Inc., 36,398 (La.App.2d Cir.10/25/02), 830 So.2d 533.
According to the defendant, Bolton willfully made false statements, concealing his complaints of right shoulder pain prior to the accident and he made the misrepresentations for the purpose of obtaining workers' compensation benefits.
In the plaintiff's deposition and in his statements to the insurance investigators, Bolton denied any prior complaints of right shoulder pain. The plaintiff was asked if he had ever sought any medical treatment of any type for his right shoulder. He denied ever making any complaint of right shoulder pain to any physicians prior to this accident. However, Bolton's medical records reveal that he had in fact complained of right shoulder pain several times prior to this work related injury. On September 24, 1993, the plaintiff complained of pain around the right shoulder blade and neck. Point tenderness along the medial and inferior aspect of the right shoulder were noted by Dr. Robert Holladay, an orthopedic surgeon. On August 11, 1993, the plaintiff *1185 again consulted Dr. Holladay with complaints of pain between the shoulder blades in the rhomboid muscles bilaterally. An entry in Bolton's medical records by Dr. Maurie Patterson notes complaints of persistent right shoulder pain. On March 26, 1999, Dr. Bicknell noted a complaint by Bolton of right shoulder pain. This was diagnosed as a rhomboid strain.
When confronted with these facts at trial, Bolton admitted that his prior answers were incorrect. However, he qualified his statements by saying that his prior complaints of right shoulder pain were in the rhomboid muscle in the back of his shoulder. The work injury was in the front of his shoulder and felt more like a rotator cuff tear.
Dr. Bicknell, the plaintiff's treating orthopedist, testified by deposition. He acknowledged that, based upon the medical records in this case, July 2000 was not the first time that the plaintiff had complained to him or to other physicians regarding right shoulder pain. He stated that the pain Bolton was experiencing from the rhomboid muscle would have felt more like back pain rather than shoulder pain.
Dr. Bicknell testified that there was no way to say with any degree of probability that the plaintiff's discomfort in his right shoulder is related to the fall rather than the same pain he had been experiencing for a number of years. Dr. Bicknell acknowledged that the plaintiff had numerous previous medical complaints, including pain in the right shoulder girdle. However, given the history presented by the plaintiff of having sustained a fall, he had to conclude that the fall added to the plaintiff's problem with his right shoulder. Dr. Bicknell stated that it would be fair to say that in this accident the plaintiff injured a new area of the shoulder and aggravated some old areas of injury.
Given these facts, we do not find that the WCJ erred in finding that the plaintiff's remarks did not rise to the level of imposing the penalty of forfeiture of benefits required under La. R.S. 23:1208. The record shows that, even though the plaintiff sought treatment for right shoulder pain prior to this accident, his complaint was in a different area of the shoulder. Although the plaintiff was not accurate in saying that he had never sought treatment for any pain associated with the shoulder in any manner, the record does show the work-related injury to have caused a new complaint not previously voiced by the plaintiff. Therefore, the WCJ's finding that the plaintiff's statements were inconsequential is not clearly wrong or manifestly erroneous.
The defendant also claims that Bolton made willfully false statements about his ability to work. The defendant pointed to the notes of the plaintiff's physical therapist (PT) during his treatment for the present injury indicating that he had made little progress and yet was very active outside of therapy. The notes showed that the plaintiff was using heavy equipment like a chainsaw. The PT also noted a possible development of a dependency on pain medication. The PT further noted that the plaintiff was possibly magnifying his symptoms. In spite of this, the plaintiff told the insurance adjuster that he was not able to do any kind of work.
The record shows that the plaintiff was able to do light duty work with specified restrictions from the date of his injury. The parties also stipulated that the plaintiff is not claiming to be temporarily totally disabled. There is also no allegation that he is totally permanently disabled. Therefore, any statement by the plaintiff claiming to be unable to work at all is inconsequential to the issues presently before the court. While such a statement would not *1186 be accurate, it does not rise to the level of a willful false statement necessary for the imposition of the penalty provisions of La. R.S. 23:1208.
Based upon the record before us, we find that the WCJ was not manifestly erroneous or clearly wrong in rejecting the defendant's claim that, under La. R.S. 23:1208, Bolton should forfeit any workers' compensation benefits to which he might be entitled.

MEDICAL BENEFITS
According to the defendant, the WCJ erred in awarding medical benefits to Bolton of $225 for one doctor's visit not previously paid for by the defendant. This argument is without merit.
Under La. R.S. 23:1203(A), an employer shall furnish all necessary drugs, supplies, hospital care and services, medical and surgical treatment, and any nonmedical treatment related to an employee's work-related injury. However, this duty is limited to the reimbursement determined to be the mean of the usual and customary charges for such care, services, treatment, drugs, and supplies, as determined under the reimbursement schedule annually published pursuant to La. R.S. 23:1034.2 or the actual charge made for the service, whichever is less. La. R.S. 23:1203(B).
The defendant contends that Bolton did not prove by a preponderance of the evidence that his shoulder problems and treatment were caused by the fall at work. The defendant argues that no physician has linked Bolton's complaints of right shoulder pain to the accident. According to the defendant, Bolton's doctor said that the work injury could have aggravated his right shoulder problems or it could have been a continuation of the problems he already had. The defendant also points out that Bolton is having the same trouble with his left shoulder as with the right and that there was no source of trauma to the left shoulder.
The plaintiff and Dr. Bicknell provided evidence from which the WCJ could reasonably find that there was an accident and that the shoulder was injured in the accident. As outlined above, Dr. Bicknell stated that the accident injured new areas of the plaintiff's shoulder and aggravated some old injuries. Under these facts, the plaintiff sustained his burden of showing a causal relationship between the accident and the shoulder injury. The workers' compensation judge did not err in awarding unpaid medical expenses in the amount of $225.00.

CONCLUSION
For the reasons stated above, we affirm the decision of the workers' compensation judge in all respects. Costs in this court are assessed one-half to the plaintiff, Joe Bolton, and one-half to the defendant, Mike Fleming Construction.
AFFIRMED.
NOTES
[1] Although the plaintiff points out that the result of the drug test were not admitted at trial, he acknowledged that he frequently took the pain killer, Lortab. His wife also confirmed this in her testimony. The plaintiff also stated that, although he had not taken any of the medicine before this accident, he went to his vehicle and took some after he was injured.