899 So.2d 747 (2005)
Debra A. SMITH, Plaintiff-Appellant
v.
BOSSIER PARISH SCHOOL BOARD, Defendant-Appellee.
No. 39,590-WCA.
Court of Appeal of Louisiana, Second Circuit.
April 6, 2005.
*748 Davis Law Firm, LLC, by S.P. Davis, Sr., Shreveport, for Appellant.
Hammonds & Sills, by Patrick F. Robinson, Shelton Dennis, Blunt Michael, Blake Kramer, Jon K. Guice, Baton Rouge, for Appellee.
Before WILLIAMS, GASKINS and LOLLEY, JJ.
GASKINS, J.
In this workers' compensation case, the claimant, Debra A. Smith, appeals from a judgment that found that she failed to meet her burden of proving that she was entitled to workers' compensation benefits. We affirm.

FACTS
On February 14, 1995, the claimant was employed as a teacher's aide for the Bossier Parish School Board (BPSB). While trying to restrain a special education student at Butler Elementary School, she injured her lower back.
BPSB paid benefits to the claimant through February 24, 2002. It terminated them on the basis that she was capable of gainful employment within certain limitations set forth by her doctor and that it had identified jobs within her physical restrictions and in her geographical area. These included jobs at Radiofone Beepers, Red River Chevrolet, U-Save Auto Rental, and Stewart Financial.
On March 20, 2002, the claimant filed a disputed claim for compensation. She requested penalties, interest and attorney fees, alleging that the employer arbitrarily terminated her weekly benefits.
BPSB filed its answer on August 6, 2002, in which it admitted that the claimant was temporarily disabled during the period that benefits were paid. However, it denied the existence of any permanent disability or loss of earning capacity.
Trial was held on September 5, 2003. In addition to the claimant, testimony was given by Dr. Donna Holder, her pain management doctor; Linda Hollingsworth, a *749 claims adjuster who handled BPSB claims; and Suzanne Mitton, a vocational counselor and certified case manager. Also testifying about availability of jobs for which the claimant was physically suited were Kim Smelser of Red River Motor Company, Terry Milam of U-Save Auto Rental and Rachel Mitchell of Stewart Finance Company.
On March 29, 2004, the worker's compensation judge (WCJ) gave oral reasons for denying recovery to the claimant. Judgment in favor of BPSB and against the claimant was signed April 19, 2004. Costs were assessed against the claimant. In written findings of fact, the WCJ stated that the claimant's weekly wage was unknown, several contradictory figures having been given, and he found that the claimant had not shown by a preponderance of the evidence that she was unable to earn 90 percent of her wage at the time of her injury.[1] The WCJ further found that BPSB proved that there were jobs available to the claimant as early as July 2001 and also in November 2001. These jobs were in the $6 to $8 per hour range. According to the WCJ, the medical evidence showed that she was able to work with restrictions. It concluded that she was not entitled to supplemental earnings benefits (SEBs) or temporary total disability (TTD) benefits. Her claim for penalties and attorney fees was also denied.
The claimant chose to appeal. Although the WCJ denied her request to proceed in forma pauperis, this court granted her writ application and allowed her to proceed as a pauper.

ENTITLEMENT TO SEBs

Law
Under the provisions of La. R.S. 23:1221(3)(a), an employee is entitled to receive SEBs if he sustains a work-related injury that results in his inability to earn 90 percent or more of his average pre-injury wage. Initially, the employee bears the burden of proving, by a preponderance of the evidence, that the injury resulted in his inability to earn that amount under the facts and circumstances of the individual case. Banks v. Industrial Roofing & Sheet Metal Works, Inc., 96-2840 (La.7/1/97), 696 So.2d 551.
In determining whether a finding that an employee has not met his initial burden of proving entitlement to SEBs is manifestly erroneous, a reviewing court must examine the record for all evidence that bears upon the employee's inability to earn 90 percent or more of his pre-injury wages. Bolton v. Mike Fleming Construction, 36,521 (La.App.2d Cir.12/11/02), 833 So.2d 1177.
Once the employee's burden is met, the burden shifts to the employer. An employer can discharge its burden by establishing, by a preponderance of the evidence: (1) the existence of a suitable job within the claimant's physical capabilities, and within the claimant's or the employer's *750 community or reasonable geographic region; (2) the amount of wages that an employee with claimant's experience and training can expect to earn in that job; and (3) an actual position available for that particular job at the time that the claimant received notification of the job's existence. Banks v. Industrial Roofing & Sheet Metal Works, Inc., supra; Bolton v. Mike Fleming Construction, supra.
Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. Banks v. Industrial Roofing & Sheet Metal Works, Inc., supra.

Argument
The claimant argues that the WCJ erred in finding that she failed to carry her burden of proving that she could not earn 90 percent of her pre-injury wage because there was no determination of her pre-injury wage. She requests that the matter be remanded for determination of her pre-injury wage. The claimant also contends that the evidence established that she is restricted from lifting anything above 10 pounds and unable to sit for long periods of time, and that her facet joint arthritic condition can only be treated by pain management. According to the claimant, this information alone was sufficient to meet her burden of proof that she cannot earn 90 percent of her pre-injury wage.
As to the employer's burden of proving available jobs within the claimant's geographical region, the claimant asserts that the evidence does not show that the jobs mentioned were actually still available when she was informed of them. Also, medical approval was sought only after the plaintiff was made aware of the jobs.
The employer responds that the burden was on the claimant to prove her inability to earn 90 percent of her pre-injury wage rate; by necessity, this included proving her pre-injury wage rate. Even had the claimant carried her burden of proof on this issue, the employer maintains that the record shows that she failed to prove that she could not earn 90 percent of her pre-injury wage. Also, the employer contended that it adequately carried its burden in showing that there were jobs suitable for the plaintiff and within her geographical area. They included positions as a financial collector, customer service representative, and receptionist. It further documented the wages that a worker with the claimant's experience and training could be expected to earn, and they exceeded 90 percent of her pre-injury wage. The employer maintains that the evidence showed that at the time the claimant received notification of these jobs, a position actually existed.

Discussion
Like the WCJ, we find that the record is replete with contradictory figures for the claimant's wage. The uncertainty is apparently compounded by the fact that the claimant was a school board employee who worked the months of the school year but who was also paid over the summer months.
The claimant, who bore the burden of proof on establishing her pre-injury wage, stated that, since they were paid through the summer when they were off, "[w]e figured it up hourly." According to her recollection, her hourly wage was $7.55. However, in her pre-trial statement she proposed a stipulation that her average weekly wage was $280 at the time of the accident, and in her post-trial brief, she asserted that her wage was $7.50 per hour.
Hollingsworth, the claims adjuster, testified that, according to the information in her file, the claimant's average weekly wage was $206.10. Although she initially testified that the hourly wage was $5.15, *751 she later admitted that she was not certain of this figure. Mitton, the vocational counselor, testified that she recalled a discussion that the claimant made $5.15 per hour. In its post-trial brief, the employer stated that the claimant had an annual salary of $9,893 or an average weekly wage of $190.25 at $5.44 per hour. However, we are unaware of evidence in the record supporting these figures.
A vital component in ascertaining whether the claimant is unable to earn 90 percent or more of her average pre-injury wage is a determination of the amount of that pre-injury wage. We cannot say that the WCJ was manifestly erroneous in finding that the claimant failed to carry her burden of proof on this issue.
Furthermore, even if we assume arguendo that the hourly wage testified to by the claimant, i.e., $7.55 per hour, was correct, the claimant still failed to carry her burden of proving that she was unable to earn 90 percent of that wage, or $6.80 per hour. The plaintiff has been released to go back to work by Dr. Holder, her own pain management specialist. Dr. Holder, who has been treating the plaintiff since 1996, outlined the work restrictions for the claimant. According to Dr. Holder, the job would have to be sedentary and would have to allow the claimant to stand or sit as needed, with a limitation of light lifting. Dr. Holder approved many of the jobs submitted by Mitton and specifically consented to the four named by the employer in this suit. Two of these jobs had wages exceeding 90 percent of the pre-injury wage asserted by the claimant. Therefore, the claimant was unable to carry any aspect of her burden of proof.
Since we are upholding the WCJ's finding that the claimant failed to carry her initial burden of proof and that the burden never shifted to the employer to show the availability of suitable employment within her geographical area, we pretermit consideration of the claimant's remaining assignments of error.

CONCLUSION
The judgment of the workers' compensation judge is affirmed. The costs of this appeal are assessed against the appellant/claimant.
AFFIRMED.
NOTES
[1] In his written findings of fact, the WCJ stated:

Debra Smith's average weekly wage is unknown, Claimant testified $10/hour, Ms. Hollingsworth, adjuster $5.15/hour or $206.10 a week, Claimant's pre-trial states $280/week, Claimant's post-trial memo [states] $7.50/hour, and Employer's post-trial memo asserts $5.44/hour or $190.25/week. No documentary evidence as to wages was introduced at trial.
In his oral reasons for judgment, the WCJ also declared:
She has failed to show by a preponderance of the evidence that she is unable to earn at least 90 percent of her pre-injury wage, because she has not shown me what her pre-injury wage was. I don't even get to the issue of whether or not the jobs were available or not available, but they were shown to be available.