# STATE OF LOUISIANA
## COURT OF APPEAL, THIRD CIRCUIT

## WCA 18-28


**MELODY P. SMITH**

**VERSUS**

**CIRCLE K STORES, INC. AND ACE AMERICAN INS. CO.**


\*\*\*\*\*\*\*\*\*\*

APPEAL FROM THE
OFFICE OF WORKERS'COMPENSATION – DISTRICT 4
PARISH OF ST. LANDRY, NO. 14-6309
ANTHONY PAUL PALERMO, WORKERS' COMPENSATION JUDGE

\*\*\*\*\*\*\*\*\*\*

**JOHN E. CONERY**
**JUDGE**

\*\*\*\*\*\*\*\*\*\*

Court composed of John E. Conery, D. Kent Savoie, and Candyce G. Perret, Judges.


**AFFIRMED, MOTION TO STRIKE DENIED.**

**Gloria A. Angus**
**Angus Law Firm, L.L.C.**
**Post Office Box 2337**
**Opelousas, Louisiana  70571**
**(337) 948-8800**
**COUNSEL FOR PLAINTIFF/APPELLANT:**
     **Melody P. Smith**


**Thomas J. Eppling**
**Lance Edward Harwell**
**Staines & Eppling**
**3500 North Causeway Boulevard, Suite 820**
**Metairie, Louisiana  70002**
**(504) 838-0019**
**COUNSEL FOR DEFENDANTS/APPELLEES:**
     **Circle K Stores, Inc.**
     **Ace American Insurance Company**

**CONERY, Judge.**

Plaintiff-Appellant, Melody P. Smith, appeals the judgment of the Workers' Compensation Judge (WCJ) denying penalties and attorney fees against her employer Circle K Stores, Inc. and its workers' compensation insurer, Ace American Insurance Company (Ace American) for failure to approve medical care for Ms. Smith's injury to her right knee. For the following reasons, we affirm.

## FACTS AND PROCEDURAL HISTORY

On September 21, 2013, while in the course and scope of her employment with Circle K Stores, Inc., Ms. Smith went to a Capital One Bank in Lafayette, Louisiana to make a night bank deposit. Before Ms. Smith could reach the bank, she was the victim of an armed robbery. The perpetrator crashed his truck into the rear of her car and shot twice at Ms. Smith's vehicle, almost striking Ms. Smith. He proceeded to smash the window of Ms. Smith's car and take the deposit bag from the front seat. Ms. Smith sustained injuries to her neck, back, and knee as a result of the incident.

The defendants have paid Ms. Smith workers' compensation benefits since the incident.[1] However, a dispute arose over the issue of treatment for injury to Ms. Smith's right knee. As a result, on September 22, 2014, Ms. Smith filed a 1008 Disputed Claim for Compensation, commonly referred to as a Form 1008, pursuant to La.R.S. 23:1034.2(F)(1) against the defendants, claiming, "[Ms.] Smith requested evaluation related to her knee injury occurring during the course and scope of employment.[2] Insurer/Employer refused to [pre-authorize] evaluation for knee injury

---

[1] Ms. Smith also filed an intentional tort suit against Circle K, which has since been dismissed by another panel of this court in *Smith v. Sam*, 17-664, (La.App. 3 Cir. 2/7/18), 237 So.3d 1204.

[2] Although "Traveler[']s" was named as an insurer on Ms. Smith's September 22, 2014 1008 Claim Form, Dr. Blanda's medical records at the time the 1008 was filed show "Traveler's Comp. Insurance" as the payor of the medical treatment rendered to Ms. Smith, and a representative of Traveler's attended the April 2015 management conference discussed later in this opinion, Circle K Stores, Inc. and Ace American asserted in their answer that Traveler's did not insure Circle K Stores, Inc. by stating: "**Now** . . . come Circle K Stores, Inc. and Ace American Insurance Company, (improperly identified as 'Ace American Insurance Company/Travelers')[.]"

with Ms. Smith's choice of physician [(Dr. Louis Blanda, Jr.)]. [Ms.] Smith requests penalties and attorney fees as well as judicial interest from date of demand."

On April 25, 2016, Ms. Smith's disputed claim was heard, and the WCJ took the matter under advisement. On September 1, 2016, the WCJ issued an oral ruling denying Ms. Smith's claim alleging the defendants failed to authorize treatment of her right knee by Dr. Blanda, her orthopedic surgeon of choice, and her claim for penalties and attorney fees. The WCJ found that the treating physician in question (Dr. Blanda) had failed to properly request the treatment of Ms. Smith's knee by sending the required LWC-WC-1010 ("1010 Form") pursuant to the Medical Treatment Guidelines, contained in LA. ADMIN. CODE tit. 40, pt. I, §2175 (2014). Because the WCJ found the defendants had reasonably controverted Ms. Smith's claim that they failed to authorize treatment with Dr. Blanda, Ms. Smith was not entitled to penalties and attorney fees, thus none were awarded.

Oral reasons were read into the record in open court on September 1, 2016, and a judgment was signed by the WCJ on November 14, 2016. Notice of judgment was mailed to all parties on November 16, 2016. However, in October 2016, prior to the signing of the November 14, 2016 judgment, Ms. Smith filed a motion for new trial and later filed a motion for a devolutive appeal with this court on November 7, 2016. Ms. Smith's appeal was lodged in this court on March 6, 2017.

In *Smith v. Sam*, 17-80 (La.App. 3 Cir 5/17/17) (unpublished opinion), a panel of this court dismissed Ms. Smith's previous appeal pursuant to La.Code Civ.P. art. 2087(D), which provides that "[a]n order of appeal is premature if granted before the court disposes of all timely filed motions for new trial or judgment notwithstanding the verdict." The panel found that when Ms. Smith filed her motion for devolutive appeal on November 7, 2016, her motion for new trial was still pending and pursuant to La.Code Civ.P. art. 2088, the workers' compensation court had not been divested of jurisdiction. *See Egle v. Egle,* 05-531 (La.App. 3 Cir. 2/8/06), 923 So.2d 780.

2

Accordingly, the order of appeal was granted prematurely, and this court lacked jurisdiction over Ms. Smith's first appeal. The first appeal was dismissed, and the case was remanded to the WCJ for a determination of the pending motion for new trial.

The WCJ heard Ms. Smith's motion for new trial on August 4, 2017. After hearing argument of counsel, the WCJ stated in pertinent part:

> With regards [sic] to the authorization of the knee and the request for a new trial and penalties and attorney fees, I don't believe there are grounds for a new trial in this case. The issue with the knee was always related to the failure of the doctor to request it in the correct manner. That's why I do not feel that there was arbitrary and capricious conduct and penalties and attorney fees were owed. I'm not going to change my mind about that.

A judgment denying Ms. Smith's motion for new trial was signed on August 17, 2017. Therefore, this court now has the proper jurisdiction to hear Ms. Smith's timely appeal of the WCJ's November 14, 2016 judgment in which the WCJ denied her claim alleging the defendants improperly failed to authorize treatment and her request for attorney fees and penalties, as well as the judgment dated August 17, 2017, denying the motion for new trial.

## ASSIGNMENTS OF ERROR

Ms. Smith asserts the following assignments of error on appeal:

1. The Lower Court committed manifest error in finding that the defendants did not act in an arbitrary and capricious [manner] in denying evaluation/treatment of Plaintiff's knee injuries with her choice of physician, [Dr. Louis Blanda, Jr.], when the request for evaluation/treatment for the shoulder was made at the same time [as] the [knee] and the defendants authorized evaluation /treatment for the shoulder but not the knee and failed to controvert the denial of the knee.

2. The [L]ower Court abused its discretion and committed manifest error in denying penalties and attorney fees, interest and costs.

## LAW AND DISCUSSION

### Standard of Review

The standard of review in a workers' compensation claim is well established and was succinctly stated in *Bracey v. City of Alexandria*, 13-16, pp. 2-3 (La.App. 3 Cir.

3

6/5/13), 115 So.3d 1211, 1214-15, *writ denied*, 13-1934, (La. 11/8/13), 125 So.3d 455 (citations omitted):

> Factual findings in workers' compensation cases are subject to the manifest error or clearly wrong standard of appellate review. In applying the manifest error standard, the appellate court must determine not whether the trier of fact was right or wrong, but whether the factfinder's conclusion was a reasonable one. Where there are two permissible views of the evidence, a factfinder's choice between them can never be manifestly erroneous or clearly wrong. Thus, "if the [factfinder's] findings are reasonable in light of the record reviewed in its entirety, the court of appeal may not reverse, even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently."

> "The determination of coverage is a subjective one in that each case must be decided from all of its particular facts." "[T]he manifest error standard of appellate review applies in workers compensation cases and great deference is accorded to the [workers' compensation judge's] factual findings and reasonable evaluations of credibility."

### *Motion to Strike Attachments to Appellant's Brief*

The defendants filed a motion to strike the attachment to Ms. Smith's original brief filed in support of her appeal on the basis that the document was "completely washed out and illegible." The defendants' motion was referred to the merits. The defendants stated that the attachment was not identified in Ms. Smith's original briefing but appeared to be the transcript of the new trial hearing before the WCJ. As previously stated, Ms. Smith's original appeal was remanded for a hearing on the still pending motion for new trial.

The defendants conceded that the attachment may be a part of the record on appeal before this court. On review, we find that the attachment is the illegible transcript of the hearing on Ms. Smith's motion for new trial held by the WCJ, a legible copy of which is contained in the record on appeal. Pursuant to La.Code Civ.P. art. 2164, a "transcript" is part of the record that may be reviewed by this court on appeal. *See* Uniform Rules—Courts of Appeal, Rule 2-1.9. Accordingly, the defendants'

4

motion to strike the attachment is denied. However, counsel is cautioned that in the future any attachment to briefing to this court must be legible.

***Assignments of Error One and Two***

Ms. Smith's assignments of error will be addressed together as the WCJ's determination that the defendants were not arbitrary and capricious in denying treatment of Ms. Smith's right knee by Dr. Blanda was the basis of the WCJ's determination that no penalties and attorney fees should be awarded.

Ms. Smith's Form 1008 and her argument at the hearing claimed that the defendants refused to pre-authorize treatment for Ms. Smith's right knee, despite having received information that she had injured her neck, shoulder, and knee in the robbery incident.

At the start of the hearing, there was an issue of whether the defendants had, from the outset of Ms. Smith's workers' compensation claim, designated the claimed injury to Ms. Smith's right knee as a compensable injury. A compensable injury is defined in pertinent part under La.R.S. 23:1021(8)(a) of the Worker's Compensation Act to "include only injuries by violence to the physical structure of the body and such disease or infections as naturally result therefrom."

The testimony of Ms. Rebecca Couret, the Claims Professional for Ace American, clarified the question of the compensability of Ms. Smith's knee injury in her response to questioning by the WCJ:

Q    Your testimony is that the knee was accepted from the
      outset of the claim?
A    Correct. The previous adjuster had accepted the knee.
Q    And when I say, "Claim," I'm not talking about the litigation.
A    Correct.
Q    I'm talking about the claim.
A    Correct.
Q    Okay. And from what you testified to, my understanding is that
      Approval for treatment for the knee has not been given because
      you have not received a 1010 form from the doctor; is that
      right?
A    Correct. For anything beyond an office visit, we would require
      a 1010 for diagnostic or any kind of treatment beyond an office

5

visit.

Ms. Couret's testimony on the requirement of the filing of a 1010 Form for an MRI, the diagnostic procedure for Ms. Smith's right knee requested by Dr. Blanda, Ms. Smith's orthopedic surgeon of choice, is supported by the statutory language of the Louisiana Workers' Compensation Act. The Louisiana Administrative Code Title 40, Part I, Section 2715(D)(1) (emphasis added) provides:

> Submission and Process for Request for Authorization
>
> Except as provided pursuant to D.2.,[3] to initiate the request for authorization of care beyond the statutory non-emergency medical care monetary limit of $750 per health care provider, the health care provider **shall** submit LWC-WC-1010 along with the required information of this Section by fax or email to the carrier/self insured employer.

During her testimony, Ms. Couret was questioned by counsel for the defendants concerning the procedure for a physician to obtain approval in general for the treatment of a claimant with a compensable injury:

> Q      But you do know that the plaintiff's claim at the time -- near the time that it happened was accepted as compensable?
> A      Correct.
> Q      Am I correct?
> A      Correct.
> Q      All right. What is the procedure for a physician to obtain approval to treat a claimant? In general?
> A      Just the office visit? Or anything beyond?
> Q      No, just the general. How do they get approval for something more than an office visit?
> A      They send a 1010 form. A Louisiana 1010 form along with some brief documentation for whatever it is they're requesting, whether it be an MRI, physical therapy, surgery, what have you.
> Q      Okay, and what do you do when you get the 1010 form?
> A      We review it to see if it meets the medical treatment guidelines for Louisiana. If it meets it, it's approved. And if it does not meet it, it's not approved and then the physician can file an appeal with the medical director.
> Q      Okay. Suppose it meets the medical treatment guidelines, then what?
> A      It's approved.
> Q      If it's compensable and it's been accepted.
> A      If it's compensable, yes.

---

[3] Louisiana Administrative Code Title 40, Part I, Section 2715(D)(2) (entitled "Evaluation and Management Visits") provides the requirements for routine office visits and evaluations in subsection a.

Ms. Couret also testified that Dr. Blanda submitted a 1010 Form on March 23, 2016, requesting an MRI of Ms. Smith's right knee. The request by Dr. Blanda was timely approved on March 24, 2016, and a copy of the approved form was properly submitted into evidence. Ms. Couret further testified that Dr. Blanda had never submitted a 1010 Form for treatment of Ms. Smith's right knee prior to the first 1010 Form dated March 23, 2016, and that no other physician had submitted a 1010 Form requesting treatment of Ms. Smith's right knee during her handling of Ms. Smith's claim.

Additionally, Ms. Couret testified that during her handling of the claim, Ms. Smith had been diagnosed with osteoarthritis in both her right and left knee. Ms. Smith's medical records contained only the March 23, 2016 1010 Form request from Dr. Blanda for the MRI for Ms. Smith's right knee, which was approved by the defendants on March 24, 2016.

During Ms. Smith's testimony under cross-examination, she admitted that at her initial appointment with Dr. Blanda on March 11, 2014, the only complaints she listed on her Patient Information Form were for pain in her left shoulder and neck. Ms. Smith confirmed that the Patient Information Form contained no mention of any problem or injury to her right knee. The record evidence referenced by counsel for Ms. Smith at oral argument contains Ms. Smith's certified medical records that apply to the September 22, 2014 Form 1008 claim at issue. The relevant records cover medical treatment of Ms. Smith from March 11, 2014, through April 27, 2015.

Dr. Blanda's certified medical records for Ms. Smith confirm her testimony that at the initial visit with Dr. Blanda on March 11, 2014, her left shoulder was the focus of the examination. Ms. Smith's medical records also show that Dr. Blanda ordered an x-ray of Ms. Smith's left shoulder that was conducted on the same date. Dr. Blanda's notes from March 11, 2014, stated, "[s]he indicates she also struck her right knee on the

console and this is still bothering her, but she is only here for her left shoulder today."

Dr. Blanda recommended a left shoulder MRI and that a "workers' comp 1010 form for authorization be submitted" for a cervical MRI to determine the source of Ms. Smith's neck pain. A 1010 Form was submitted by Dr. Blanda's office for the two MRIs and they were approved on March 28, 2014. The MRIs requested by Dr. Blanda were conducted on April 1, 2014, at St. Mary's Imaging Center.

On April 23, 2015, a management conference was held consisting of Dr. Blanda, Travelers Insurance Company's representative, Ms. Claire Brown, and Ms. Smith's attorney, Ms. Gloria Angus. The three individuals discussed a note in Dr. Blanda's June 3, 2014 report that an evaluation of Ms. Smith's right knee had not been approved by the workers' compensation insurer. Dr. Blanda was then informed for the first time that Dr. Joseph Bozzelle, Jr. was also treating Ms. Smith and had recommended an X-ray of Ms. Smith's right knee. Dr. Blanda agreed with the recommendation and suggested that an MRI also be conducted. Dr. Blanda further stated that he had no additional recommendations for treatment from an orthopedic standpoint and that Ms. Smith had reached Maximum Medical Improvement (MMI).

On April 24, 2015, shortly after the management conference, an addendum note to Dr. Blanda's January 27, 2015[4] report on Ms. Smith stated, "Dr. Blanda had a conference yesterday, 4-23-15, with the patient's case manager. Dr. Blanda is discontinuing the patient's treatment here and deferring to Dr. Bozzelle." Effective January 27, 2015, Dr. Blanda was no longer treating Ms. Smith. However, sometime after Dr. Blanda's 2015 retroactive relinquishment of Ms. Smith's treatment, she returned to Dr. Blanda's care.[5] On March 23, 2016, Dr. Blanda requested an MRI of Ms. Smith's right knee, which was timely approved by the defendants on March 24,

---

[4] January 27, 2015 was the last time Dr. Blanda saw Ms. Smith before the April 23, 2015 management conference.

[5] The record does not evidence when Dr. Blanda resumed treating Ms. Smith. It only contains a copy of Dr. Blanda's March 23, 2016 MRI request.

2016.

Ms. Smith further admitted that after the accident, she had X-rays taken of both knees at University Medical Center (UMC). She confirmed that on a subsequent visit to another physician in Lake Charles, she was told that she had osteoarthritis in both of her knees. An emergency room record from UMC dated November 25, 2014, which was admitted into evidence, confirmed the diagnosis of osteoarthritis in both of Ms. Smith's knees. Ms. Smith testified that she was not sure she ever saw the documentation of osteoarthritis from UMC, but finally agreed to knowing of the diagnosis of osteoarthritis in both of her knees.

The diagnosis of osteoarthritis was further confirmed by a report dated September 17, 2015, from the Louisiana Specialty Institute, where Ms. Smith underwent X-rays of her knees at the request of Dr. Bozzelle, from whom she was also seeking treatment. Ms. Smith testified that Dr. Bozzelle had also informed her of the diagnosis of osteoarthritis in both of her knees.[6] Ms. Smith was cross-examined about pre-accident progress notes from Stafford Health Care dated September 13, 2013, which indicated under the patient history section, "Her knee no longer gives her any trouble." Ms. Smith admitted that she had provided the information in the Stafford Health Clinic Progress Notes.

The documentation submitted into evidence was thoroughly reviewed by the WCJ who correctly determined that Ms. Smith had been diagnosed with osteoarthritis of her right knee on several occasions and had received extensive evaluation and treatment of her right knee. Based on the testimony and record evidence, the WCJ issued oral reasons and found:

> The issue in this case is whether the condition of the right knee of Ms. Smith is a compensable injury. At the outset, it's important to note, that defendant has accepted the right knee as a compensable claim.

---

[6] Ms. Smith's complete medical records from Dr. Bozzelle were proffered by Ms. Smith at the hearing after the defendants objected that the medical records were not properly certified. However, the Louisiana Specialty Institute document referencing Dr. Bozzelle's treatment of Ms. Smith was properly submitted into evidence without objection.

9

Treatment for that knee has been authorized by the defendant.

The issue in this case is whether the defendant has authorized and paid for treatment for the right knee. The Court finds that the injury to the right knee is a compensable claim. The Court further finds that the defendant has properly authorized treatment for the right knee. Specifically, the defendant has authorized an MRI, which was performed on the knee. After a review of the medical records of Dr. Blanda and Dr. Bozzelle, the Court does not find where the physicians have made a request for any specific treatment for the knee that has not been authorized by the defendant's. The plaintiff had her right knee examined at University Medical Center. She has then had her knee examined by Dr. Blanda and Dr. Bozzelle. Dr. Blanda requested that an MRI be performed on the knee for diagnostic purposes. That was approved on March 23, 2016.

The Court does not find that any other treatment has been requested for the right knee in this matter. Therefore, the Court does not find that the defendant is arbitrary and capricious, and the Court denies the claim for penalties and attorney fees. It's important to note that Ms. Smith has been diagnosed with bilateral knee osteoarthritis. The right knee is compensable, because the Court finds that there was an exacerbation of her condition due to the accident.

We find no manifest error in the WCJ's findings that the defendants approved the only properly submitted 1010 Form from Ms. Smith's chosen orthopedic surgeon, Dr. Blanda.

*Penalties and Attorney Fees*

A panel of this court clearly defined the basis for an award of penalties and attorney fees in *Landry v. Furniture Center*, 05-643, p. 10 (La.App. 3 Cir. 1/11/06), 920 So.2d 304, 311, *writ denied*, 06-358 (La. 4/28/06), 927 So.2d 290:

Under La.R.S. 23:1201(F), a claimant in a workers' compensation claim has the burden of proving his entitlement to statutory penalties for the employer's refusal or failure to timely pay workers' compensation benefits. To avoid the imposition of penalties and attorney fees, the employer and its insurer must provide factual and medical evidence to reasonably controvert a workers' compensation claim. *Bolton v. Mike Fleming Construction*, 36,521 (La.App. 2 Cir. 12/11/02), 833 So.2d 1177. The employer must have an "articulable and objective reason to deny benefits at the time it took the action." *Authement v. Shappert Engineering*, 02-1631[, p. 11] (La. 2/25/03), 840 So.2d 1181, 1188.

"Whether or not the employer is cast with attorney fees and penalties is a question of fact that will not be reversed on appeal absent manifest error." *Lambert v. Brookshire Grocery Co.*, 06-1001, p. 11 (La.App. 3 Cir. 12/20/06), 945 So.2d 918, 927.

Based on the record before us, we find the WCJ did not commit manifest error in finding that the defendants were not arbitrary and capricious in the handling of Ms. Smith's treatment of her right knee. The defendants properly responded to and approved the one and only request made by Dr. Blanda on the required 1010 Form to conduct an MRI on Ms. Smith's right knee. Thus, the defendants successfully "reasonably controverted" Ms. Smith's claim based on both the medical and factual evidence submitted into the record at the hearing. *See Bolton*, 833 So.2d at 1177. Therefore, we find that the WCJ properly denied penalties and attorney fees sought in Ms. Smith's September 22, 2014 Form 1008 claim.

### CONCLUSION

For the foregoing reasons, we affirm the November 14, 2016 judgment of the Workers' Compensation Judge in all respects. We further deny the Motion to Strike filed on behalf of Circle K Stores, Inc., and its workers' compensation insurer, Ace American Insurance Company. All costs of this appeal are assessed to Melody P. Smith.

**AFFIRMED, MOTION TO STRIKE DENIED.**

11